UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER J. WARREN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MANAGEMENT AND TRAINING CORPORATION, CHRIS APKER, GEORGIANA PUENTES, AND JESSE BERNAL,<br><br>　　　　Defendants. | 1:16-cv-849-LJO-DLB (PC)<br><br>SCREENING ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND AND DENYING MOTION FOR PRELIMINARY INJUNCTION<br>(Doc. 5) |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and

without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. SCREENING REQUIREMENT AND STANDARD.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). Similarly, when a plaintiff is proceeding in forma pauperis but § 1915A does not apply, the court "shall dismiss the case at any time if the court determines" that the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." *Pierce v. San Francisco Exam'r*, No. 15-CV-06051-EMC, 2016 WL 2851649, at *1 (N.D. Cal. May 16, 2016) (quoting 28 U.S.C. § 1915(e)(2)(B)). If an action is dismissed on one of these three basis, a strike is imposed per 28 U.S.C. § 1915(g). An inmate who has had three or more prior actions or appeals dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted, and has not alleged imminent danger of serious physical injury does not qualify to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(g); *Richey v. Dahne*, 807 F.3d 1201, 1208 (9th Cir. 2015).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mereconclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir.

2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Id.*

### III. BACKGROUND OF THE CASE

**1. Procedural Posture**

Plaintiff Christopher J. Warren is a federal prisoner proceeding pro se and in forma pauperis in this civil rights action. Plaintiff filed his complaint on June 20, 2016. Doc. 1. On July 1, 2016, he filed an amended complaint. Doc. 6, First Amended Complaint ("FAC").[1] Plaintiff alleges that Management and Training Corporation ("MTC") and three of its individual employees (Craig Apker, Geogiana Puentes, and Jesse Bernal) are liable under California's Bane Act (Cal. Civ. Code § 52.1) because they forced him to make copies of copyrighted materials, in violation of 17 U.S.C. § 506 and his First, Fifth, and Eighth Amendment rights. Plaintiff raises no federal causes of action.[2]

**2. Plaintiff's Allegations**

Plaintiff is incarcerated at federal prison in Taft, California, which is operated by Defendant Management and Training Corporation ("MTC"). FAC at Ct. R. 9. Defendant Apker is warden of the prison. *Id.* His allegations are based on the period of time where he was "hired" by MTC staff to act as "the inmate copy clerk" on February 1, 2014. *Id.* at Ct. R. 11. He states that his job duties included making copies for various employees at the facility, including Defendants Bernal (his unit manager) and Puentes (the associate warden). *Id.* Part of his job included copying entire books for staff members. *Id.* While he was "slightly concerned" about this practice, he was told that it was acceptable because the

---

[1] The Court will construe Plaintiff's memorandum of points and authorities attached to the FAC to constitute part of the FAC.

[2] Plaintiff originally sought to recover pursuant to 28 U.S.C. § 1983 and the *Bivens* doctrine, but amended his complaint to drop this allegation upon realizing that such claims against private contractors operating federal facilities were foreclosed by the Supreme Court in *Minneci v. Pollard*, 132 S. Ct. 617, 626 (2012). FAC at Ct. R. 2.

copies "fell under the exceptions to copyright protection statutes because it was 'educational' and for the 'social cause of rehabilitation.'" *Id.* at Ct. R. 12. He alleges that Puentes ordered him to make "hundreds upon hundreds of copies of entire textbooks," that these orders were documented, and that this was done with "the knowledge, permission and oversight" of Bernal. *Id.*

Between June and November of 2014, Plaintiff enrolled in a class on intellectual property. *Id.* at Ct. R. 13. In this class, "it became clear to him that MTC was violating title 17 as part of the MTC COMMON PRACTICE." *Id.* Plaintiff reports that he raised the issue "no less than three times" with three different staff members. *Id.* at 14. The first "stopped the practice for herself" but told him to "do as your [sic] told, your [sic] an inmate, it's not on you." *Id.* The second told him that he had "warned" MTC about the fact that "someone could get in trouble," but advised Plaintiff to "keep doing what you are doing—you don't have a choice." *Id.* The third responded by threatening "to get the Major-the highest ranking member of a security apparatus in the prison to come and 'enforce' so that inmates do 'what they are told by staff per policy.'" *Id.*

Plaintiff subsequently quit his position as copy clerk and attempted to transfer to another facility several times "to get separation from him at his MTC keepers for fear of retaliation, fear that the would get caught and attempt to blame the inmates – the Plaintiff for their own misconduct." *Id.* at Ct. R. 14-15. These attempts were denied, apparently based on internal policy considerations. *Id.* at Ct. R.15.

In March of 2016, less that year after he quit his position as copy clerk, Plaintiff filed an "administrative remedy request"[3] with the Bureau of Prison's general counsel, and notified him of the alleged copyright law violations, and requested a transfer from MTC care. *Id.* at Ct. R. 16. Bernal was subsequently observed "raiding the Satellite Camp copy room." *Id.* Shortly thereafter, Plaintiff was informed that all of the order forms documenting the copying practices were missing and the copy room

---

[3] The BOP maintains the "Administrative Remedy Program" to "allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10 (a). Once a request for remedy is filed, a "response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days. 28 C.F.R. § 542.18.

was being closed "indefinitely." *Id.* Plaintiff alleges that these forms "are the one document that that shows the liability of their staff members and company." *Id.* at Ct. R. 17. He also claims that MTC "has shredded pallets and pallets of evidence, keeping only 3 boxes of copied books as the 'evidence of their internal investigation.'" *Id.* His request for transfer was denied on April 4, 2016. *Id.* at Ct. R. 16. Plaintiff filed a second request on April 10, 2016, in which he alleged that MTC was conducting a "cover-up. On April 19, 2016 he filed a third request, wherein he stated claims for retaliation. *Id.* These requests were denied on April 29, 2016. *Id.* A fourth request, filed April 30, 2016, was also denied. *Id.* at Ct. R. 17. On June 6, 2016 he filed a claim under the Federal Tort Claims Act with the BOP. *Id.*

Plaintiff reports that MTC has since changed their photocopying practices "to include copyright notices and higher-authority sign offs before copying can be done." *Id.* He also reports that MTC has begun working with publishers to obtain licenses to use materials. *Id.* However, he claims that since this time he has "now suffered intolerable work and living environments, retaliation, deprivation of civil rights and emotional distress." *Id.* at Ct. R. 24.

Plaintiff now brings two claims against Defendants for violation of the Bane Act, which are premised on violations of his constitutional rights, and one California state law negligence claim.

### IV. ANALYSIS

**1.  Subject matter jurisdiction**

"Federal courts are courts of limited jurisdiction." *Kokonnen v. Guardian Life Insurance Co.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted). The Court may raise the absence of subject matter jurisdiction *sua sponte*, and must dismiss an action if it determines at any time that it lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) (if court determines at any time that it lacks subject matter jurisdiction, it must dismiss action); *Steel v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998) (court "bound to ask and answer for itself," whether it has jurisdiction, "even when not otherwise suggested"); Fiedler v. Clark, 714 F.2d 77,

78 (9th Cir. 1983) (federal court may dismiss sua sponte if jurisdiction lacking).

### a. Federal Question

It is "settled doctrine that where a suit is brought in the federal courts upon the sole ground that the determination of the suit depends upon some question of a federal nature, it must appear, at the outset, from the declaration or the bill of the party suing, that the suit is of that character." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672, 70 S. Ct. 876, 879, 94 L. Ed. 1194 (1950) (internal quotations omitted). "The federal questions must be disclosed upon the face of the complaint, unaided by the answer." *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127–28 (1974) (internal quotations omitted). Moreover, "the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense." *Id.*

Here, Plaintiff asserts that this court has jurisdiction because his claim involves allegations of constitutional and copyright law violations. Federal courts have jurisdiction over cases arising under any "the Constitution, laws, or treaties of the United States," and, more specifically, any "[a]ct of Congress relating to patents, plant variety protection, copyrights and trademarks." 28 U.S.C. §§ 1331, 1338. "A case may arise under federal law 'where the vindication of a right under state law necessarily turned on some construction of federal law.'" *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808–09, 106 S. Ct. 3229, 3232, 92 L. Ed. 2d 650 (1986) (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 9, (1983).

Plaintiff alleges that Defendants are liable to him under California Civil Code § 52.1, known as "the Bane Act," because they coerced him to violate federal copyright law and that conduct, in turn, violated his First, Eighth, and Fifth Amendment rights. Whether such violations occurred are federal questions and pivotal issues in the case. Thus, the Court finds that it has subject matter jurisdiction over Plaintiff's Bane Act claims at this stage. 28 U.S.C. §§ 1331, 1338. Because Plaintiff's state law negligence claim arises out of the same controversy as his Bane Act claim, the Court has supplement

jurisdiction of this claim. 28 U.S.C. § 1367(a).[4]

## 2. Sufficiency of Plaintiff's Bane Act Claim

Plaintiff brings this action under California's Bane Act, California Civil Code § 52.1, which creates a cause of action for "violations of constitutional and statutory rights." *Rivera v. Cty. of Los Angeles*, 745 F.3d 384, 393 (9th Cir. 2014). California courts have recognized that there are two distinct elements for a section 52.1 cause of action: "(1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67, (2015). Section 52.1 was not intended to redress harms "brought about by human error rather than intentional conduct," but rather that "where coercion is inherent in the constitutional violation alleged, i.e., an over detention in County jail, the statutory requirement of 'threats, intimidation, or coercion' is not met." *Shoyoye v. Cty. of Los Angeles*, 203 Cal. App. 4th 947, 959 (2012).

Plaintiff alleges that Defendants are liable under the Bane Act for violating his Eighth Amendment right. Thus, whether his Bane Act claim is sufficient turns on whether he has alleged violations of his First, Eighth, and Fifth Amendment rights.

### a. Eighth Amendment Claims

Plaintiff's Eighth Amendment claim is based on the fact that as a copy clerk, he was "ordered . . .to make hundreds upon hundreds of copies of entire textbooks, in violation of title 17, without having the appropriate permissions or licenses at the time." FAC at 12.

Under Ninth Circuit case law, a prison official violates the Eighth Amendment only when they cause a deprivation that is "objectively, 'sufficiently serious.' "[5] *Farmer v. Brennan*, 511 U.S. 825, 834

---

[4] As discussed below, the Court finds that Plaintiff has failed to state claims with regards to these allegations. Because it is not clear that amendment would be futile, the Court is not dismissing these claims with prejudice. If Plaintiff cannot cure these issues on amendment and these claims are dismissed, the Court may decline to continue to exercise supplement jurisdiction. 28 U.S.C. § 1367(c)(3).

[5] While Plaintiff alleges violation of state law, because the underlying cause is a federal question, federal law controls. While

7

(1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Such a claim may be based on conditions of confinement if a petitioner can show that an act or omission resulted in "the denial of 'the minimal civilized measure of life's necessities." *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Additionally, a plaintiff must show that a prison official acted with "a sufficiently culpable state of mind." *Id.* (quoting *Wilson*, 501 U.S. at 297). "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.*

Where courts have found that conditions of confinement have violated the Eighth Amendment, there has always been an element of harm, or "an unreasonable risk of serious damage" to an inmate's current or future health. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). For example, denial of medical attention to prisoners constitutes an eighth amendment violation "if the denial amounts to deliberate indifference to serious medical needs of the prisoners." *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986). Similarly, the Ninth Circuit found double-celling practices at one facility unconstitutional where it was "undisputed" that the practice posed "serious risks of violence and sexual attack to its inhabitants." *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 472 (9th Cir. 1989). In the context of prison work, the Ninth Circuit has found that "the Eighth Amendment does not apply unless prisoners are compelled to perform physical labor which is beyond their strength, endangers their lives or health, or causes undue pain." *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994) (no constitutional violation where inmate was forced to work an extra eight-hour shift as a clerk, but he suffered no physical harm).

The Court cannot locate any authority that remotely supports Plaintiff's assertion that Defendants' conduct violated his Eighth Amendment rights. Plaintiff does not allege that his work in the

---

the cases in this discussion Eighth Amendment claims in the context of claims brought pursuant to 28 U.S.C. § 1983, this Court finds their analyses persuasive as to the disposition of Plaintiff's state law claims. As many sister courts have found, "the elements of a § 52.1 claim are essentially identical to those of a § 1983 claim." *Love v. Salinas*, No. 2:11-CV-00361-MCE, 2011 WL 2620453, at *7 (E.D. Cal. July 1, 2011) (citing *Corser v. Cty. of Merced*, No. 1:05CV00985OWWDLB, 2009 WL 174144, at *25 (E.D. Cal. Jan. 26, 2009); *see also Harper ex rel. Harper v. Poway Unified Sch. Dist.,* 345 F. Supp. 2d 1096, 1115 (S.D. Cal. 2004) (overturned on other grounds by *Harper ex rel. Harper v. Poway Unified Sch. Dist.*, 549 U.S. 1262 (2007)). Additionally, the Court could find no parallel cases in California's appellate case law.

clerk's office compelled him to suffer any harms. Nor does he claim that his work endangered his life or health. While he believes that he was forced to violate copyright laws, there is no indication in his pleadings that he was at risk for being held liable. All that this Court may conclude from his pleadings is that he made a lot of copies and that at some point he came to believe that his activities were unlawful. Thus, there is no basis from which this Court can find that he suffered or was exposed to risk in a manner that has been recognized as unconstitutional. Because Plaintiff was not suffering or at risk, there is no basis from which the Court can conclude that any of the Defendants acted with deliberate indifference.

### b. Due Process Claims

Plaintiff alleges that his due process rights were violated because Defendants did not give him proper notice that "that his job would involve violating federal law." FAC at Ct. R. 21.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). "When protected interests are implicated, the right to some kind of prior hearing is paramount." *Id.* at 569-70. "Property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." *Id.* at 571–72. Similarly, protected liberty interests go beyond the "freedom from bodily restraint" and include

> the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.

*Id.* at 572. Protected interests may also "arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

Here, it is unclear which of Plaintiff's protected interests were implicated. Plaintiff does not, however, claim that he suffered any effects that affected his liberty or his property. To the extent that Plaintiff may be alleging that his ability to transfer out of prisons was affected, this avenue has been

foreclosed by the Supreme Court. *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (no liberty interest in staying in a particular facility).

          **c.**     **Retaliation Claims**

While Plaintiff does not delineate a First Amendment claim, he does allege that he "[w]hen he blew the whistle, [he] was met with retaliation that is still going on to this day." FAC at Ct. R. 22, 24. A viable claim of retaliation in violation of the First Amendment consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). To the extent that Plaintiff intended to raise a claim that his First Amendment rights were violated by retaliatory conduct, he fails to state a claim because he does not explain how he "blew the whistle," "informally objected," or how he was "met with threats."

          **3.**     **Negligence**

Plaintiff's final claim is for negligence under California state law. FAC at Ct. R. 23. In California, "[a]ctionable negligence involves a legal duty to use due care, a breach of such legal duty, and the breach as the proximate or legal cause of the resulting injury." *Beacon Residential Cmty. Assn. v. Skidmore, Owings & Merrill LLP*, 59 Cal. 4th 568, 573 (2014). Plaintiff's claim fails because he has not alleged a cognizable injury. Plaintiff does not allege facts that suggest that he suffered a harm that might have been reasonably foreseeable by any of the Defendants. While he claims that he was subjected to "intolerable work and living environments," Plaintiff has alleged no facts that explain how or why his conditions were intolerable. He describes that MTC staff falsely told other inmates that they were "going away" because of his conduct, but he does not state that the other inmates did anything in response. Plaintiff's claim that the suffered from "emotional distress" fails because he does not link this consequence to the conduct of any particular Defendant. Thus, there is no basis from which this Court might conclude that his distress was foreseeable, much less that a Defendant had a duty to prevent it. *See*

*Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993) ("[U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty.")

## V. CONCLUSION AND ORDER

For the reasons stated, Plaintiff's complaint fails to state a claim on which relief may be granted. Accordingly, the Court DISMISSES Plaintiff's complaint and DENIES Plaintiff's motion for a preliminary injunction (Doc. 5). Plaintiff is granted leave to file an amended complaint within 30 days of service of this Order.

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. *Iqbal*, 129 S.Ct. at 1948-49. "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the original complaint, *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997), and must be "complete in itself without reference to the prior or superceded pleading." Local Rule 220. "All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted). Once plaintiff files an amended complaint, the original complaint no longer serves any function in the case. Thus, any amended complaint must be written or typed so that it so that it is complete in itself without reference to any earlier filed complaint. Local Rule 220.

Accordingly, the Court ORDERS that:

1. The Clerk's Office shall send to Plaintiff a civil rights complaint form;

2. Plaintiff's FAC, filed on July 1, 2016, is DISMISSED for failure to state a claim;

3. Within thirty days from the date of service of this order, Plaintiff shall file a second amended

11

complaint or a notice of voluntary dismissal; and

4. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will dismiss this action with prejudice for failure to state a claim and to obey a court order.

IT IS SO ORDERED.

Dated: **August 5, 2016**       /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE